Linnie LINDSEY, Barbara Hodgens and Pamela Ray, Plaintiffs-Appellants,

v.

Joseph GREENE and Unknown Deputy Sheriffs, Defendants-Appellees.

No. 79–3477.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 11, 1980.

Decided May 18, 1981.

Betsey B. Swan, Legal Aid Soc. of Louisville, Robert Frederick Smith, Louisville, Ky., for plaintiffs-appellants.

William L. Hoge, III, Asst. Jefferson County Atty., John Swain, Harry E. Sykes, Louisville, Ky., for defendants-appellees.

Before KEITH and MERRITT, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

MERRITT, Circuit Judge.

This case presents the single issue of the constitutionality of a Kentucky statute that allows constructive service of process by posting in forcible entry and detainer actions. The statute, Ky.Rev.Stat. § 454.030, states:

If the officer directed to serve notice on the defendant in forcible entry or detainer proceedings cannot find the defendant on the premises mentioned in the writ, he may explain and leave a copy of the notice with any member of the defendant's family thereon over sixteen years of age, and if no such person is found he may serve the notice by posting a copy thereof in a conspicuous place on the premises. The notice shall state the time and place of meeting of the court.

Plaintiffs-appellants, tenants in a Louisville housing project, claim that service by posting allows judgment without notice in violation of the Due Process Clause. The District Court granted summary judgment against them. We reverse and, in light of intervening Supreme Court cases changing the law, hereby overrule *Weber v. Grand Lodge of Kentucky*, 169 F. 522 (6th Cir.), *cert. denied*, 215 U.S. 606, 30 S.Ct. 406, 54 L.Ed. 346 (1909).

In 1975 the Louisville Housing Authority filed detainer actions against appellants in state court in order to repossess their apartments. Process was served by posting copies of the summonses on the doors of their apartments. They allege that they never saw the summonses and did not learn of them until they were served with writs of possession, executed after default judgments had been entered against them and the time for appeal had expired.

Having no recourse in state court, appellants filed the present action in the United States District Court for the Western District of Kentucky, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 for violation of the right to notice guaranteed by the Due Process Clause. Uncontradicted testimony taken in depositions indicated that some fifty percent of summonses were served via posting and that not infrequently the posted summonses were removed by people other than those served, thus affording tenants no notice of the proceedings against them. The District Court recognized the problem but nonetheless dismissed the complaint, relying on the authority of *Weber*.

In *Weber* the Sixth Circuit rejected a similar constitutional challenge to the predecessor of § 454.030, which was in all relevant respects identical to the rule challenged now. Plaintiffs in *Weber* served process on out-of-state defendants who had leased realty in Kentucky by posting a copy of the summons on the realty. The Court noted that the constitutionality of such constructive notice was "well settled by repeated decisions of the Supreme Court." 169 F. at 527.

Federal courts have long held that procedural due process requirements come into play when governmental power is used to deprive a person of an interest, derived from the common law, in the peaceful possession and use of real property. Notice of suit and an opportunity to be heard is an essential element of a judicial proceeding, distinguishing it from the exercise of arbitrary power.[1]

Crucial to our Court's decision in *Weber* was the traditional distinction between proceedings *in rem* and proceedings *in person-*

---

1. Questions of notice similar to the one presented here under the Due Process Clause obviously also arise in international law and under the Full Faith and Credit Clause of the Constitution. There is a long line of cases developing notice standards in these areas. For example, in an 1815 case from Massachusetts, *Sawyer v. Maine Fire & Marine Ins. Co.*, 12 Mass. 291, a decree of condemnation of a vessel because of its attempt to run a blockade, rendered by the King of Haiti without any no- tice or hearing granted to the owners of the vessel, was refused by the Massachusetts court and was held not to be res judicata of the facts it purported to find. *See also Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905) (establishing notice rules for recognition of judgments under the Full Faith and Credit Clause); *Schibsby v. Westenholtz*, 6 Q.B. 155 (1870) (a Queen's Bench case discussing similar standards for recognition of judgments in international law).

*am* observed by the Supreme Court throughout the nineteenth century.[2] Different standards governed the kind of process appropriate in the two kinds of proceedings. The doctrinal framework for measuring those standards set up by the Court in *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), stood for nearly seventy years. In *Pennoyer*, the Court concluded that *in personam* jurisdiction may not ordinarily be obtained without personal service, but that *in rem* jurisdiction may rest upon the fiction that seizure of property does provide notice to its owner. The Court constitutionalized the principle that the states were powerless to extend their jurisdictional authority in *in personam* proceedings to those beyond their boundaries as it reaffirmed the power of the states to adjudicate all rights to property within their boundaries, regardless of the presence of its owners.

The *Weber* Court concluded that the proceeding before it was "in the nature of a proceeding *in rem*." 169 F. at 527. It recognized that the jurisdictional rule established in *Pennoyer* required it to choose between allowing constructive service by posting or denying the state the power to settle the claims of non-residents to property within the state. *Id.* at 526. It rested its conclusion that service by posting satisfied due process requirements upon four Supreme Court cases, all decided in the shadow of *Pennoyer: Huling v. Kaw Valley Railroad*, 130 U.S. 559, 9 S.Ct. 603, 32 L.Ed. 1035 (1889); *Arndt v. Griggs*, 134 U.S. 316, 10 S.Ct. 557, 33 L.Ed. 918 (1890); *Ballard v. Hunter*, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461 (1907); and *Longyear v. Toolan*, 209 U.S. 414, 28 S.Ct. 506, 52 L.Ed. 859 (1908). In each case the Court had upheld the constitutionality of statutes that provided for service by posting in *in rem* proceedings. It had held in each case that due process required no effort to give defendants in *in rem* proceedings personal notice.

■ Subsequent decisions by the Supreme Court have removed the doctrinal framework underlying the Sixth Circuit's decision in *Weber*. With *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court effectively erased the former distinction between *in rem* and *in personam* jurisdiction. On the one hand the cases extended state jurisdiction to persons not within the territorial boundaries, so long as sufficient "minimum contacts" existed between the person and the state; on the other they established stricter due process notice requirements, limiting the use of such formerly permissible methods as publication. The Court has recognized that the belief that "an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property" is an outmoded fiction. *Shaffer v. Heitner*, 433 U.S. at 212, 97 S.Ct. at 2584. It accordingly has held that the Fourteenth Amendment right to fair notice "cannot depend on the classification of an action as *in rem* or *in personam*." *Id.* at 206, 97 S.Ct. at 2580. *Accord, Mullane v. Central Hanover Bank & Trust Co., supra.*

■ The standard now applicable to the present case as well as to traditional *in personam* proceedings is that set out in *Mullane*: the "fundamental requirement of

---

**2.** A state in general has jurisdiction over property within its borders. A proceeding affecting such property obviously affects an absent owner of the thing dealt with. Justice Holmes discussed the distinction between actions *in rem* and *in personam* in the following language: "If the technical object of the suit is to establish a claim against some particular person, with a judgment which generally, in theory at least, binds his body, or to bar some individual claim or objection, so that only certain persons are entitled to be heard in defence, the action is *in personam*, although it may concern the right to or possession of a tangible thing.... If, on the other hand, the object is to bar indifferently all who might be minded to make an objection of any sort against the right sought to be established, and if anyone in the world has a right to be heard on the strength of alleging facts which, if true, show an inconsistent interest, the proceeding is *in rem*." *Tyler v. Judges of Court of Registration*, 175 Mass. 71, 76, 55 N.E. 812, 814 (1900).

due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657. The Court held in *Mullane* that published notice of judicial settlement constituted insufficient notice to those beneficiaries of a common trust fund who could easily be reached by mail. Notice by publication was inadequate "not because in fact it fails to reach everyone, but because ... it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 659. The Court followed *Mullane* in two later cases arising out of condemnation proceedings, ruling invalid notice by publication in *Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), and notice by posting near but not on the landowner's property in *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

■ The precise issue raised in the present case—whether notice by posting on tenants' apartments meets the constitutional test of adequacy—has never been treated by the Supreme Court, nor by any Court of Appeals. The reasoning of the Supreme Court's decisions seems clearly to demand in the present case, however, that the state at least provide notice by ordinary mail. In *Mullane* the Court concluded that where, as in the present case, addresses are known, "the reasons disappear for resort to means less likely than the mails to apprise" affected parties of pending proceedings. 339 U.S. at 318, 70 S.Ct. at 659. There was undoubtedly a time when posting provided a surer means of giving notice than did mailing. That time has passed. The uncontradicted testimony by process servers themselves that posted summonses are not infrequently removed by persons other than those served constitutes effective confirmation of the conclusion that notice by posting "is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 660. Whatever it may once have been, the mail today is recognized as an efficient and inexpensive means of communication. *Id.*

Requiring Kentucky to provide notice by mail when personal service proves infeasible will not be overly burdensome. The cost will be minimal, and the state's conceded interest in providing a summary procedure for settlement of landlord-tenant disputes will not be · seriously circumscribed. The New York counterpart to § 454.030, for example, prescribes that when notice is served by posting, a copy of the petition must be sent by registered or certified mail within a day of the posting. *See Velazquez v. Thompson*, 451 F.2d 202, 205 (2d Cir. 1971).

Accordingly, the judgment below is reversed and the cause remanded for proceedings consistent with this opinion.